UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:07-CR-92 |
| | ) | (VARLAN/SHIRLEY) |
| FRANCISCO MORALES ANGELES and JOSE SANCHEZ, | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Defendant, Francisco Morales Angeles ("Angeles"), also referred to as Juan Gonzales, is charged with Counts One through Nine listed in the First Superseding Indictment [Doc. 49], and defendant, Jose Sanchez ("Sanchez"), is charged with Counts One through Eight listed in the First Superseding Indictment [Doc. 49], in connection with the kidnaping and carjacking of Jose Garcia. Sanchez filed a motion to suppress [Doc. 22] in which he requests that the Court enter an order suppressing statements he made to agents of the Federal Bureau of Investigation ("FBI") on July 14, 2007 on the grounds that the statements were obtained in violation of his rights under the Fourth and Fifth Amendments of the United States Constitution. Angeles filed a motion to suppress [Doc. 38] in which he requests that the Court enter an order suppressing all oral, written, or recorded statements he made, before or after his arrest, to any government agent on the grounds that the statements were obtained in violation of his rights under the Fourth and Fifth Amendments of the United States Constitution and Section 7, Article I of the Tennessee Constitution.

Following an evidentiary hearing on the motion to suppress on November 19, 2007, Magistrate Judge C. Clifford Shirley filed a report and recommendation ("R&R") [Doc. 59], in which he recommended that both motions to suppress be denied. This matter is before the Court on defendant Angeles's objection [Doc. 60], and defendant Sanchez's objection [Doc. 61], to the R&R.

As required by 28 U.S.C. § 636(b)(1), the Court has undertaken a *de novo* review of those portions of the R&R to which defendants object. In doing so, the Court has carefully considered Judge Shirley's R&R [Doc. 59], the underlying briefs [Docs. 22; 23; 38; 45; 48; 52; 56; 57], and briefs regarding the pending objections [Docs. 60; 61]. The government has not responded to defendants' objections and the time for doing so has passed. *See* L.R. 7.1(a), 7.2. The Court observes that the record contains no transcript of the hearing before Judge Shirley and the Court therefore accepts Judge Shirley's recitation of the evidence and findings of facts as true and correct. For the reasons set forth herein, the Court will overrule defendants' objections, and the motions to suppress [Docs. 22; 38] will be denied.

I.  **Analysis**

   A.  **Waiver of Privilege Against Self-Incrimination and Right to Counsel**

Both defendants argue that their statements should be suppressed because they did not knowingly and intelligently waive their right to remain silent and right to counsel. A statement by a defendant during a custodial interrogation without counsel present may only be introduced at trial if the defendant "knowingly, and intelligently waived his privilege against self incrimination and his right to retained or appointed counsel." *Miranda v.*

*Arizona*, 384 U.S. 436, 475 (1966) (citation omitted). There is a presumption against waiver and thus the government bears the burden of proving that any waiver was voluntarily, knowingly, and intelligently given. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). The government must establish that the defendant was aware of "the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Whether a defendant's waiver of his rights was given voluntarily, knowingly, and intelligently is a question that must be decided based upon the totality of the circumstances surrounding the statement in question. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973); *Garner v. Mitchell*, 502 F.3d 394, 408 (6th Cir. 2007). The court must consider the defendant's "age, experience, education, background, and intelligence, and [] whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Garner*, 502 F.3d at 408 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. *Butler*, 441 U.S. at 373.

### B. <u>Statements by Sanchez</u>

Defendant Sanchez objects to Judge Shirley's conclusion that Sanchez's statements to FBI Special Agent Glenn Gregory should not be suppressed because Sanchez fully understood the waiver of his constitutional rights. Sanchez also objects to the use of Agent

3

Gregory's typed summary of Sanchez's statements which was not transcribed until four days after Sanchez made the statements. Upon careful review of the record and controlling law, the Court agrees with Judge Shirley's conclusion that Sanchez fully understood his rights and the meaning of a waiver of those rights, and accordingly concludes that his waiver was made knowingly and intelligently.

The government does not dispute that Sanchez had a right to remain silent and a right to have counsel present at the time he made the statements he wishes to have suppressed. The issue is whether Sanchez properly waived these rights. Sanchez argues that his English language skills are insufficient to have permitted him to make a knowing and intelligent waiver of his constitutional rights. The Court does not agree. Sanchez made the statements at the FBI field office in Houston in English after Agent Gregory explained the charges against Sanchez and asked Sanchez, in English, if he wanted to give a statement. When Sanchez indicated that he did want to speak, Agent Gregory provided him with an advice of rights form, written in English. Agent Gregory stated that Spanish advice of rights forms were available but he did not give one to Sanchez because he determined that Sanchez could speak and understand English. Agent Gregory testified that he watched Sanchez initial next to each right indicating that he understood it and sign the form indicating that he was waiving his rights. Agent Gregory had Sanchez read the form aloud and Agent Gregory testified that Sanchez had no trouble doing so other than not being able to pronounce or understand the word "coercion."

Sanchez relies heavily on his lack of familiarity with the word coercion to support his argument for lack of understanding. The Court agrees with Judge Shirley's determination that Sanchez's difficulty with the word coercion does not lead to the conclusion that his waiver was not made knowingly or intelligently. The sentence in the waiver that included the word coercion reads: "No promises or threats have been made to me and no pressure or coercion of any kind has been used against me." [Doc. 45.] The sentence has the same meaning and can be properly understood with or without the word coercion. To ensure that Sanchez understood all of the language in the waiver, Agent Gregory explained that the word coercion meant "to feel forced to speak to myself and Sergeant Clark" [Doc. 59]. Sanchez then stated that he understood the word and the waiver as a whole.

Sanchez's motion for suppression suggests that Agent Gregory's assessment of Sanchez's understanding of the English language was based upon an "if you can pronounce it you can understand it" test. This is not the case. Agent Gregory testified that he based his conclusion that Sanchez spoke English on his observation of Sanchez's English skills at the scene of his arrest, during the booking process, throughout his two-hour interview with Sanchez, and from information received from the Knoxville FBI office, which indicated that Sanchez speaks English. The only trouble Sanchez had with communicating in English was his lack of familiarity with the word coercion and some trouble writing in English. In attempting to label a photograph for identification, Sanchez indicated that did not know how to write "Paco's girlfriend" in English and Agent Gregory permitted him to write it in Spanish. Agent Gregory, who has made an assessment of whether a person can speak

5

English hundreds of times, testified that it is not uncommon for someone that does not have trouble understanding English verbally to have trouble writing it.

Sanchez objects to the use of FBI 302, which is Agent Gregory's transcription of Sanchez's July 14, 2007 statements, because it was transcribed four days after the interview and the interview could have been audio or video taped which would have allowed the Court to hear Sanchez's exact statements. Sanchez seems to be objecting on the bases of both the potential for inaccuracy due to the delay in transcription and because the Court cannot judge Sanchez's grasp of English as effectively as it would have been able to had the interview been tape recorded. While the Court recognizes that an audio or video recording of the interview, if one was available, would greatly assist the Court in determining Sanchez's grasp of English, the lack of one does not preclude the Court from considering FBI 302. The document memorialized what Sanchez communicated to Agent Gregory which necessarily occurred in English because Agent Gregory does not speak Spanish and therefore is relevant to the evaluation of Sanchez's ability to understand English.

Considering Sanchez's own use of the English language, his responsiveness to Agent Gregory's use of English, and his statement that he understood the waiver of rights form, the Court finds that Sanchez possessed the English skills necessary to understand his rights and the consequences of waiving those rights. Accordingly, the Court agrees with Judge Shirley's determination that Sanchez understood the English advice of rights form and that his waiver of rights was made knowingly and intelligently. Thus, defendant Sanchez's objection to the R&R is **OVERRULED**.

### C. Statements by Angeles After Signing the Waiver

Defendant Angeles objects to Judge Shirley's conclusion that Angeles knowingly and intelligently waived his *Miranda* rights based upon the totality of the circumstances because his English skills are limited, he has no prior experience with the criminal justice system, and he was held for nearly two hours before he was advised of his *Miranda* rights. Upon careful review of the record and controlling law, the Court agrees with Judge Shirley's conclusion that Angeles's waiver of his rights was knowingly and intelligently.

Angeles argues for suppression on the basis that there is nothing in the record that indicates that he understood his *Miranda* rights or that he understood the significance of signing the waiver form. The Court does not agree. After Agent Gregory determined during booking that Angeles had difficulty speaking and understanding English, he called Agents Orlando Munoz and Angelo Guzman to come into the office to interview Angeles in Spanish. The record demonstrates that the agents provided Angeles with an advice of rights form written in Spanish, that Agent Guzman read each of Angeles's rights to him in Spanish giving Angeles the opportunity to indicate that he understood each one, and that Angeles was given time to read the waiver written in Spanish on his own before signing it. Agent Guzman specifically asked Angeles whether he understood the form and whether he was willing to talk to officers without an attorney present. Angeles responded affirmatively to both questions and Agent Guzman instructed him to sign the form, which he did.

Angeles has presented no evidence to counter his own assertion that he understood his rights. Angeles's assertions that he has no prior experience with the criminal justice

system and he was held for nearly two hours before he was advised of his *Miranda* rights do not demonstrate that his waiver was not knowing and intelligent. Accordingly, the Court finds that his waiver of rights and decision to talk to Agents Munoz and Guzman was made knowingly and intelligently.

The fact that Angeles made statements to Agent Gregory during booking and before he had been apprised of and waived his rights does not affect the admissibility of the statements made after the waiver of his *Miranda* rights. In a situation where some statements must be suppressed because they were made prior to a waiver of rights, subsequent statements are still admissible if they are given after a waiver is knowingly and voluntarily made. *Oregon v. Elstad*, 470 U.S. 298, 309 (1985). Unless there was deliberate coercion or improper tactics on the part of the government that caused the initial non-*Mirandized* statements, "a careful and thorough administration of *Miranda* warnings" will cure the problem for future statements. *Id.* at 310-11. Because Agent Guzman carefully read through the waiver form with Angeles and did not have him sign the form until he stated that he understood it, the Court concludes that Angeles knowingly and intelligently waived his rights and that therefore the statements made after he signed the waiver are admissible. Accordingly, defendant Angeles's objection to the R&R is **OVERRULED**.

### D. Statement by Angeles Before Signing the Waiver

There are no objections to the portion of the R&R which finds that Angeles's initial statements to Agent Gregory are inadmissible. The Court agrees with Judge Shirley's analysis and determination on this issue and will accept this portion of the R&R.

## II.     Conclusion

For the reasons set forth herein, the Court **ACCEPTS IN WHOLE** the Report and Recommendation of Judge Shirley, defendants' objections [Docs. 60; 61] to the Report and Recommendation are **OVERRULED**, and defendants' motions to suppress [Docs. 22; 38] are hereby **DENIED**.

IT IS SO ORDERED.

                                            s/ Thomas A. Varlan
                                            UNITED STATES DISTRICT JUDGE